IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHRISTOPHER H. WEST, )
)
Plaintiff, )
)
v. ) Civil Action No. 13-2103-GMS
)
MARK EMIG and )
JEFFREY CARROTHERS, )
)
Defendants. )

## MEMORANDUM

### I. INTRODUCTION

The plaintiff Christopher H. West is a prisoner incarcerated at the James T. Vaughn Correctional Center ("JTVCC") located in Smyrna, Delaware. (D.I. 1.) Prior to his transfer to JTVCC, West was incarcerated at the Howard R. Young Correctional Institution ("HRYCI") located in Wilmington, Delaware. (*Id.*) On December 30, 2013, West filed a complaint, pursuant to 42 U.S.C. § 1983, alleging a violation of the Eighth Amendment to the United States Constitution. (*Id.*) West raises two related conditions of confinement claims. First, West alleges that from September 2011 to February 2012, he was repeatedly denied a mattress at HRYCI. (*Id.*) Second, he alleges that from April 2013 to June 2013, he was repeatedly denied a mattress at JTVCC.[1] (*Id.*) West filed the action against Mark Emig, Deputy Warden of HRYCI, and Jeffrey

---

[1] Throughout his pleadings, West raises multiple "deprivations" not included in his initial complaint, such as a lack of running water, no toilet, and a lack of access to legal work. (*See generally* D.I. 29, 33.) West has not formally amended these complaints, therefore, they will not be considered. *See e.g., Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). The defendants argue that West is not "focusing upon an alleged deprivation of a mattress as the basis for his pending lawsuit . . . ." (D.I. 26, ¶ 4.) The court disagrees.

Carrothers, a Major at JTVCC. (*Id.*) West is seeking monetary compensation from both defendants. (*Id.*)

West appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 8.) Presently before the court is the defendants' motion for summary judgment, West's opposition, and the defendants' reply.[2] (D.I. 20, 22, 26.) For the following reasons, the court will grant-in-part and deny-in-part the defendants' motion for summary judgment.

## II. BACKGROUND

During West's initial period of incarceration at HRYCI, he demonstrated a propensity for swallowing inedible items, such as pens, pencils, plastic straws, plastic cutlery, and bedding materials. (D.I. 21, Ex. B.) He continued this behavior following his transfer to JTVCC in August 2012. (*Id.*) As a result, West was often relocated to either the institutional infirmaries or an outside medical facility. (*See* D.I. 26-1.) Furthermore, he was classified as a high security and suicidal risk inmate, often requiring Psychiatric Close Observation ("PCO") and placement in a Secure Housing Unit (the "SHU"). (D.I. 21, ¶ 6.) West has frequently been designated as PCO Level One. (D.I. 21, Ex. A., ¶ 5.)

The defendants submitted an affidavit of Della Boone, a Correctional Officer at JTVCC. (*See Id.*) According to Boone, the Department of Corrections ("DOC") has a well-established protocol aimed at preventing an offender's suicide or self-injurious behavior. (*Id.*, ¶ 5.) Pursuant to this Suicide Prevention Policy, PCO Level One status requires severe restrictions, including a suicide-prevention garment or smock, a suicide-prevention mattress, and no bed linens. (*Id.*) Boone reiterates that the policy "does not prevent the inmate on PCO Level One from having a

---

[2] The court has also considered two affidavits filed by West (D.I. 31, 32-2) and his Supplemental Memoranda in opposition to the defendants' motion for summary judgment. (D.I. 29, 33.)

mattress. In fact, the mattress is specially designed, much like the suicide-prevention garment worn by Plaintiff, so that its components cannot be separated and used in possible suicide attempts." (*Id.*, ¶ 6.)

Contrary to the Suicide Prevention Policy, West alleges that from September 2011 to February 2012, he was repeatedly denied a mattress at HRYCI. (D.I. 1) Second, he alleges that from April 2013 to June 2013, he was repeatedly denied a mattress at JTVCC. (*Id.*)

## III. STANDARD OF REVIEW

West proceeds *pro se*, therefore, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "could affect the outcome" of the case, and there is a genuine dispute "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party has the initial burden of proving there is no genuinely disputed material fact, which "may be discharged by showing . . . that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-movant must then demonstrate the existence of a genuine dispute for trial. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant "may not rest upon mere allegations or denials of [the] pleading"; rather, the non-movant, "by affidavits or as otherwise

3

provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 586 n.11. The court, however, must "view the facts in the light most favorable to the non-moving party and [must] draw all inferences in that party's favor." *Gray v. York Newspapers*, 957 F.2d 1070, 1080 (3d Cir. 1992).

## IV. DISCUSSION

West's claims are brought pursuant to 42 U.S.C. § 1983 founded upon alleged constitutionally impermissible prison conditions when he was denied a mattress for extended periods of time.[3] West claims he was subject to pain, suffering and cruel and unusual punishment. (D.I. 1 at 3.) In order for a plaintiff to prevail under 42 U.S.C. § 1983, he must establish two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).

### A. Eleventh Amendment Immunity

The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Elderman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her

---

[3] Section 1983 provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Ali v. Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Therefore, "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102–03. The United States Congress may abrogate the states' Eleventh Amendment immunity through the Fourteenth Amendment, however, only a clear indication of Congress' intent to waive immunity will produce this result. *Seminole Tribe of Fla.*, 517 U.S. 44. No such clear intent is found in 42 U.S.C. § 1983. Accordingly, the Eleventh Amendment bars § 1983 claims for monetary damages against a state, state agency, or a state official in his official capacity.

West's complaint does not specify whether he is suing the defendants in their official or personal capacities. (D.I. 1.) Nevertheless, the defendants assert that they are immune from suit in their official capacities under the Eleventh Amendment of the United States Constitution. (D.I. 21, ¶ 17.) To the extent West seeks monetary damages from the defendants in their official capacities, the court will grant the defendant's motion for summary judgment.[4]

### B. Respondeat Superior Liability

To support a claim for a civil rights violation pursuant to 42 U.S.C. § 1983, the plaintiff must show that the defendants had personal involvement in the alleged constitutional violation. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[a] defendant in a civil rights action

---

[4] In the defendants' reply memorandum in support of their motion for summary judgment, they state that "Eleventh Amendment immunity and qualified immunity bar the action. Again, for the sake of judicial economy, the court's attention is respectfully directed to that portion of the Defendant's Opening Memorandum where the immunities' discussion and applicability are more fully set forth." (D.I. 26, ¶ 13.) The defendants failed to discuss qualified immunity in their opening memorandum; therefore, the court will not consider a qualified immunity argument at this stage in the proceeding.

5

must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). Personal involvement can be demonstrated through allegations of either personal direction or actual knowledge and acquiescence. *Id.* Furthermore, allegations of participation or actual knowledge and acquiescence must be made with particularity. *Id.*

The defendants argue that, as government officials, they may not be held liable for any unconstitutional conduct of their subordinates under the theory of respondeat superior. (D.I. 21, ¶ 19.) West claims that the defendants had "direct involvement" in the alleged wrongdoings. (*Id.*, ¶ 8.) West alleges the defendants participated in "multi-disciplinary treatment" team meetings, "where they oversaw directly and set parameters of Plaintiff's deprivation of mattress and placement in solitary confinement." (*Id.*, ¶¶ 7–8.) Moreover, West describes that he was placed on a documented "behavior plan" at HRYCI during the period of "mattress denial." (*Id.*, ¶ 6.) West not only alleges that the behavior plan was signed by defendant Mr. Emig, but also that "[o]ne of the 'rewards' of lack of self-injury was the return of said mattress." (*Id.*)

The court is aware that the documents and meetings to which West refers are not presently in the record, however, the court acknowledges that imprisoned *pro se* litigants "often lack the resources and freedom necessary to comply with the technical rules of modern litigation." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *see also Moore v. Florida*, 703 F.2d 516, 520 (11th Cir. 1983) ("*Pro se* prison inmates, with limited access to legal materials, occupy a position significantly different from that occupied by litigants represented by counsel."). Viewing the facts in a light most favorable to West, the court finds that West has at least demonstrated there is a genuine dispute as to whether the defendants had either personal knowledge of, or in any way acquiesced to, West's situation. West alleged claims against the

defendants with particularity and described that their roles in his supposed mistreatment extended beyond a mere supervisory capacity.

## C. Eighth Amendment Violation

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under "contemporary standards of decency" or such that it deprives an inmate of "the minimal civilized measure of life's necessities." *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, "objectively, sufficiently serious"; and (2) the prison official must have shown "deliberate indifference" to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Under the first prong of the *Farmer* test, the plaintiff must demonstrate that he suffered a "sufficiently serious" constitutional deprivation. *Id.* Prison officials must ensure that "inmates receive adequate food, clothing, shelter, and medical care, and must take 'reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Furthermore, prison conditions "must not involve the wanton and unnecessary infliction of pain . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In determining whether an inmate suffered a sufficiently serious constitutional deprivation, the court may consider the duration of a particular deprivation. *See Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (citing *Hutto v. Finney*, 437 U.S. 678, 685 (1978)) ("In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits."). Therefore, "a condition of confinement which does not violate the Eighth Amendment when it exists just a few days may constitute a violation when it exists for 'weeks or

7

months.'" *Schroeder v. Kaplan*, 1995 WL 3988878, *2 (9th Cir. 1995) (quoting *Hutto*, 437 U.S. at 686–87).

Under the second prong of the *Farmer* test, the prison official must have acted with "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 837. Deliberate indifference is a subjective standard based on "what the prison official actually knew." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001). Under this test, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. An Eighth Amendment claimant, however, "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

### 1. Deprivation of Mattress

Courts have found that denying an inmate a mattress for only a few days or weeks does not amount to a constitutional violation. *See Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) (holding no Eighth Amendment violation exists where prisoner spent three days without a mattress sleeping on a metal bed frame and five days with no bed frame sleeping on the floor); *Hughes v. Smith*, 237 F. App'x 756, 760 (3d Cir. 2007) (holding that the deprivation of a non-wool mattress for eight days when prisoner was allergic to wool did not rise to an Eighth Amendment violation); *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (holding no Eighth Amendment violation when prisoner spent eighteen days on a steel bed without a mattress). Furthermore, in certain circumstances, the deprivation of personal property may serve the "legitimate penological goals of preventing injury to the inmate, injury to corrections officials, and damage to the facility." *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995) (finding no Eighth Amendment violation where

prisoner was placed in a disciplinary strip cell for four days where the water in the cell was turned off, the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld).

West alleges that he was repeatedly denied a mattress for extended periods of time at both HRYCI and JTVCC. (D.I. 1.) The defendants attempt to construe West's complaint as merely being denied a *standard* mattress, and furthermore, they argue West has offered no evidence that he was never provided a mattress.[5] (D.I. 21, ¶¶ 14–15, D.I. 26, ¶ 11.) The defendants state that "the restrictions placed upon Plaintiff do not constitute 'punishment' nor were they dictated by the Defendants. Rather, the restrictions are components of a Departmental suicide-prevention protocol aimed at safeguarding Plaintiff." (D.I. 21, ¶ 21.) The defendants maintain that West was provided a suicide-prevention mattress "as per Departmental and institutional policy." (D.I. 26, ¶ 11.) Boone, a Correctional Officer at JTVCC, claims that West has not been denied a mattress during the time she has been assigned to West's housing unit and the infirmary—a time period "dating back to 2013." (D.I. 21, Ex. A, ¶ 7.)

West alleges that, contrary to the Suicide Prevention Policy, from September 2011 to February 2012, he was repeatedly denied any mattress at HRYCI. (D.I. 1) Second, he alleges that from April 2013 to June 2013, he was repeatedly denied any mattress at JTVCC. (*Id.*) West has submitted two affidavits in support of his complaint. Michael Whitten, an inmate at HRYCI, stated, "[i]n September of 2011 I was on PCO Status in the infirmary of HRYCI with Christopher West, who at the time was not allowed to have a mattress. I saw with my own eyes that he did not have a mattress." (D.I. 31.) Furthermore, in his own affidavit, West declared:

---

[5] The court recognizes the defendants did not consider West's affidavits and supplemental memoranda in drafting their motion for summary judgment.

9

> I . . . was incarcerated at HRYCI during 2011-2012. From September of 2011 till February of 2012, over 90% of the time I was on PCO status, with no mat at all, suicide or regular. And at a point in January, I slept roughly ten days on concrete naked, without a suicide prevention smock. From April of 2013 thru May 2013 . . . at JTVCC . . . I had no mat at all, suicide or otherwise.[6]

(D.I. 32-2.) Moreover, in response to the defendants, West asserts, "[i]t is not, that PCO guidelines in and of themselves constitute punishment. Rather the fact that defendants went beyond said guidelines in deprivation of mattress . . . that turn PCO precaution into punishment." (D.I. 29, ¶ 10.)

After viewing the evidence of the record, the court concludes that West has introduced sufficient evidence to raise a genuine dispute of material fact. The defendants' argument centers on the DOC's Suicide Prevention Policy; they maintain the protocol "has been and continues to be followed," and that the provision of a suicide-prevention mattress "does not constitute any form of punishment." (D.I. 21, ¶ 15.) West's affidavits cast doubt on the defendants' assertions and create a genuine dispute as to whether West was provided a suicide-prevention mattress for extended periods of time.

The defendants' reliance on Boone is only persuasive to the extent that it pertains to West's incarceration at JTVCC, notwithstanding Boone's vague assertion that she has seen West's mattress "dating back to 2013." (D.I. 21, Ex. A, ¶ 7.) West contends, and his housing record shows, that he spent "considerable time in cell 187", in Building D at JTVCC, under PCO. (D.I. 29, ¶ 9, D.I. 26-1.) According to West, '[t]hat is the time without a mattress," which, from the

---

[6] In his complaint, West alleges he was denied a mattress from April 2013 to June 2013, whereas in his affidavit he alleges he was denied a mattress from April 2013 to May 2013. (D.I. 1, 32-2.) Liberally construing West's filings, we will consider the claim as extending into June 2013. *See Adderly v. Ferrier*, 419 F. App'x 135, 139 n.4 (3d Cir. 2011); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

housing record, spans from early April to early May.[7] (*Id.*) Regarding West's incarceration at HRYCI, the defendants have provided no evidence that West was provided suicide-prevention mattress "as per Departmental and institutional policy" from September 2011 to February 2012. (D.I. 26, ¶ 11.)

The court concludes a dismissal of West's substantive claims would be premature at this stage. While denying an inmate a mattress for a few days or weeks may not amount to a constitutional violation, West is alleging a much more extended period of time, spanning months. *See Schroeder*, 1995 WL 3988878, *2. Furthermore, the question would be whether the defendants knew of and disregarded an excessive risk to West's health or safety by withholding his mattress; at this time, the answer is unknown. Although it is possible the deprivation of West's mattress may have served a legitimate penological goal of preventing injury to West, the defendants have not made this argument and, instead, maintain he was provided a suicide-prevention mattress at all times.

There is a genuine dispute as to whether West was provided any mattress and, as such, the court cannot grant summary judgment at this stage in the proceeding. If the defendants can present the court with affidavits or other evidence either discrediting West's allegations or providing an alternate position, the court will consider a motion by the defendants that seeks leave to file a renewed motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, the court will grant-in-part and deny-in-part the defendants' motion for summary judgment. The court finds there is a genuine dispute of material fact that

---

[7] The court noted that West's disciplinary record does mention that on May 10, 2013 at JTVCC, infirmary staff conducted a "shakedown and inspection of room 188, the gowns and mattress." (D.I. 21, Ex. B.) This does not necessarily contradict West's assertion that he was denied a mattress in cell 187.

11

cannot be resolved on the present motion. The motion for summary judgment on West's claims will be denied-in-part without prejudice. The court will consider a motion by the defendants that seeks leave to file a renewed motion for summary judgment.

Dated: July 24, 2015

UNITED STATES DISTRICT COURT