IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CHRISTOPHER H. WEST,  )
                                  )
        Plaintiff,  )
                                  )
    v.  ) C.A. No. 13-2103 (MN)
                                  )
MARK EMIC and JEFFREY  )
CARROTHERS,  )
                                  )
        Defendants.  )

## MEMORANDUM OPINION

Stephen A. Hampton, GRADY & HAMPTON, LLC, Dover, DE; Nicholas Casamento, CASAMENTO & RATASIEWICZ, P.C., Media, PA – Attorneys for Plaintiff

Stuart B. Drowos, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – Attorneys for Defendants

November 27, 2018
Wilmington, Delaware

*signature*

NOREIKA, U.S. DISTRICT JUDGE:

## I. BACKGROUND

Plaintiff Christopher H. West ("Plaintiff" or "Mr. West") is a prisoner incarcerated at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware. (D.I. 1). Prior to his incarceration at JTVCC, Mr. West was housed at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware. (*Id.*). On December 30, 2013, Mr. West filed a Complaint against Defendants Mark Emig, Deputy Warden of HRYCI, and Jeffrey Carrothers,[1] who held the rank of Major and was the former Operations Security Superintendent for JTVCC (jointly "Defendants"), alleging violations of the Eighth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983. (*Id.* at 2). The Complaint raises issues with Mr. West's conditions of confinement when he was denied a mattress at times: (1) between September 2011 and February 2012, while he was incarcerated at HRYCI, and (2) between April 2013 and June 2013, while he was incarcerated at JTVCC. (*Id.* at 3).

It is undisputed that Plaintiff was placed on Psychiatric Close Observation ("PCO") during these periods after he "exhibited self-injurious tendencies and demonstrated a propensity for eating unusual, inedible non-food items such as pens, pencils, plastic straws, plastic cutlery, batteries, and even bedding materials." (D.I. 66 at ¶¶ 4-6). It is also undisputed that Plaintiff's mattress was temporarily removed from his cell following an incident where he ripped open the mattress and ingested its foam padding. (D.I. 68 at ¶ 15).

In his Complaint, Plaintiff alleges that he fully exhausted his available administrative remedies regarding his claims because he "tried to file a grievance twice," which resulted in Mr. West being "denied for being on psychological observation" and later "denied for time." (D.I.

---

[1] Both Mr. Emig and Mr. Carrothers have now retired. (D.I. 66 at ¶¶ 2-3).

1

1 at 2). A review of the Delaware Automated Correction System, however, did not indicate any grievances filed by Plaintiff between September 2011 and February 2012 or between April 2013 and June 2013. (D.I. 66 at ¶¶ 19-21).

Defendants filed a Motion for Summary Judgment on January 5, 2015. (D.I. 20). On July 24, 2015, the Court granted-in-part and denied-in-part Defendants' motion, finding that certain allegations against Defendants were barred by the Eleventh Amendment, but that Plaintiff had "introduced sufficient evidence to raise a genuine dispute of material facts" as it related to the Eight Amendment claims. (D.I. 34. at 5, 10). The Court added that "[i]f the defendants can present the court with affidavits or other evidence either discrediting West's allegations or providing an alternate position, the court will consider a motion by the defendants that seeks leave to file a renewed motion for summary judgment." (*Id.* at 11). Following the Court's decision, the parties engaged in discovery. Though Plaintiff had originally filed this action *pro se*, he obtained legal representation on August 11, 2017. (D.I. 53).

Defendants filed a Renewed Motion for Summary Judgment on August 20, 2018. (D.I. 66). Defendants argue they are entitled to judgment as a matter of law because (1) Plaintiff failed to exhaust available administrative remedies prior to filing this suit; (2) Plaintiff's claims are barred by qualified immunity; (3) Defendants have no liability in their supervisory capacity; and/or (4) Plaintiff has failed to establish a violation of the Eighth Amendment. (*Id.*). On September 4, 2018, Plaintiff responded to Defendants' motion. (D.I. 67). As discussed below, Defendants' motion is granted based on Plaintiff's failure to exhaust available administrative remedies prior to the institution of this suit.[2]

---

[2] In light of its grant of summary judgment for failure to exhaust administrative remedies, the Court does not reach a decision on the other grounds for summary judgment asserted.

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The movant can meet this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). If a moving party has sufficiently carried its burden, a nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita* 475 U.S. at 587. The Court may not make credibility determinations but must instead "draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as the material facts." *Matsushita*, 475 U.S. at 586. A factual dispute is only genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.*

## III. DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a). The requirement for exhaustion of administrative remedies is absolute, except when such a remedy is unavailable. *See Ross v. Blake*, ---U.S.---, 136 S. Ct. 1850, 1856 (2016) ("[T]he remedies must indeed be 'available' to the prisoner. But aside from that exception, the PLRA's text suggest no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.'"). An administrative remedy is unavailable where "(1) despite what regulations or guidance materials may promise, it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) an administrative scheme is so opaque that it becomes incapable of use; or (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Resop v. Deallie*, C.A. No. 15-626 (LPS), 2017 WL 3586863 at *2 (D. Del. Aug. 18, 2017) (citing *Ross*, 136 S. Ct. at 1859-60). Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proved by a defendant. *Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002).

Exhaustion of administrative remedies requires that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bring suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). A prison's administrative review and grievance procedures "'supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004)). Perfect overlap between grievance and a complaint is not required, but there must be a shared factual basis from the two. *See Jackson v. Ivens*, 244 Fed. App'x. 508, 513 (3d Cir. 2007) (unpublished) (citing *Woodford*, 548 U.S. at 95).

In evaluating Defendants' renewed motion for summary judgment, the Court has reviewed Plaintiff's Complaint (D.I. 1), the papers submitted in support of and opposition to the motion (D.I. 66, 67, & 68), the declarations of the two Defendants (D.I. 66, Exhibits A & B), depositions of the Defendants (D.I. 67, Exhibits A & C), and affidavits from Delaware Department of Corrections ("DDOC") employees who searched grievance records (D.I. 66 Exhibits, D & M).

Under DDOC Policy 4.4, a prisoner must file a grievance on "form #584" within seven days of an incident. (D.I. 67 at 3). The administrative procedures provide a multi-level grievance and appeal process. (D.I. 66 at ¶ 20). Plaintiff alleged in his Complaint that he had exhausted all administrative remedies. (D.I. 1 at 2). He now, however, argues that he "falls into the exception of the Prison Litigation Reform Act" given his "inability to file a grievance pursuant to Department of Corrections Policy 4.4 due to inaccessibility to any writing materials and due to his mental observation status." (D.I. 67 at 5).[3]

A recent case in this District in instructive. In *Wood v. Russell*, 255 F. Supp. 3d 498 (D. Del. 2017), *appeal dismissed,* No. 17-2427, 2017 WL 6759100 (3d Cir. Sept. 13, 2017), the district court found that, viewed in the light most favorable to the plaintiff, the evidence suggested that the inmate "was thwarted in his efforts to exhaust his administrative remedies." *Id.* at 509. In contrast to the situation here, in *Wood*, the inmate "asked every officer who came to his cell for

---

[3] Plaintiff is apparently asserting that the restriction of writing utensils during PCO status, and the time restrictions for filing, thwarted his ability to utilize the grievance process and made it unavailable. *Ross*, 136 S. Ct. at 1859-60. There is no evidence that DDOC Policy 4.4 itself "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1853. To the contrary, the unrefuted evidence from Defendants is that Plaintiff never sought relief or requested assistance in filing a grievance while he was under PCO status. (D.I. 66 at ¶22; D.I. 67, Exhibit A at pp. 24:12-18, 49:2-10, Exhibit C at pp. 35:8-14, 55:4-8). Moreover, Defendant Emig stated that such a request would have "absolutely" been honored. (D.I. 67, Exhibit A at 49:2-10). Nor is there any evidence that DDOC Policy 4.4 is "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1853-4.

5

grievance forms only to be given excuses why they did not bring any or why they did not have them."[4] Here, it is undisputed that Defendants came in contact with Plaintiff, but Plaintiff failed to raise an issue about his access to a mattress with them. (D.I. 67, Exhibit A at pp. 24:12-18, 49:2-10; Exhibit C at pp. 35:8-14, 53:23-54:4, 55:4-8). Moreover, it is uncontroverted that in his PCO I status, Plaintiff would have had constant supervision with notes made every 15 minutes regarding his status and under PCO II status and below he would have had a check-in every 15 minutes as well as access to a writing utensil. (D.I. 67, Exhibit C at 68:10-19). Still, there is no evidence in the record that Plaintiff raised an issue with any of the observers. Moreover, there is no evidence that Plaintiff requested a #584 grievance form – from Defendants or any other DDOC employee – nor does Plaintiff respond that he made such a request. Plaintiff's failure to do so suggests that his own inaction is to blame for his failure to exhaust, rather than unavailability of grievance procedures. Finally, Plaintiff does not dispute Defendants' assertion that between September 2011 and February 2012, there were times that Plaintiff was not on PCO status and thus would have had unlimited access to writing utensils and presumably could have filed grievances. (D.I. 66 at ¶ 20).

The reasonable finding based on the record before the Court is that Plaintiff failed to exhaust his administrative remedies. No evidence suggests that Plaintiff sought to pursue his grievances through the administrative procedure, and there is no evidence that prison administrators thwarted his ability to take advantage of the grievance procedures. Thus, Plaintiff's

---

[4] In *Wood*, evidence suggested that the plaintiff had requested grievance forms on thirty-nine separate occasions. 255 F. Supp. 3d at 508 n.9. In contrast, here, there is no suggestion that even one such a request was made during the alleged deprivation. The failure by Plaintiff to raise his grievance at all belies the allegation that the grievance process was unavailable.

claims are procedurally deficient, and the Court will grant Defendants' motion for summary judgment. An appropriate order will follow.